Rose, J.
(dissenting). We respectfully dissent. The sole issue raised by Marcus CC. (hereinafter the father) is whether petitioner Maria DD. (hereinafter the grandmother) established extraordinary circumstances so as to overcome his superior right of custody. In our view, bearing in mind that “ ‘[a] finding of extraordinary circumstances is rare, and the circumstances must be such that they “drastically affect the welfare of the chil3d” ’ ” (Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010], quoting Matter of Jenny L.S. v Nicole M., 39 AD3d 1215, 1215 [2007], lv denied 9 NY3d 801 [2007] [internal quotation marks and citation omitted]), the grandmother failed to sustain her “heavy burden” (Matter of Ferguson v Skelly, 80 AD3d 903, 905 [2011], lv denied 16 NY3d 710 [2011]; see Matter of Aylward v Bailey, 91 AD3d 1135, 1136 [2012]).
The grandmother’s direct case consisted solely of her own, brief testimony, which at times was coached by respondent Erica BB. (hereinafter the mother).* The grandmother was unable to clearly testify how long the child had lived with her and was unable to identify the child’s medical diagnosis. Moreover, the grandmother acknowledged that the mother lived in the same apartment complex, saw the child every day and was responsible for taking the child to the doctor and ensuring that he had his prescription medication. Indeed, while the majority describes the mother as providing some assistance while the child resided with the grandmother, the record reveals that the child freely spent nights with the mother, and the grandmother conceded *1248 that she was working together with the mother to obtain custody.
Moreover, while the grandmother testified that the father only saw the child one or two times per year, Family Court credited him with more frequent, monthly visits and it is undisputed that the father maintained regular telephone contact with the child. Although the majority faults the father’s lack of involvement in the child’s life, he did testify that he went to the child’s school during the proceedings and, in any event, his lack of knowledge as to the child’s medical and educational needs cannot be considered persistent neglect in light of the uncontroverted fact that he maintained contact with the child (see Matter of Gray v Chambers, 222 AD2d 753, 754 [1995], Iv denied 87 NY2d 811 [1996]). Also, the father’s remark that he could have sought custody of the child earlier is insufficient to satisfy the grandmother’s heavy burden of establishing the existence of extraordinary circumstances. Nor does the father’s failure to exercise custody after the issuance of the temporary order have any bearing on whether the grandmother satisfied her burden. Notwithstanding the father’s subsequent explanations, the record reveals that when that order was issued, Family Court expressly suggested that the father work with the grandmother so that the child could continue to live with her.
In sum, there is no viable claim here that the father surrendered, abandoned or persistently neglected the child, nor was there any evidence that he was an unfit parent. Although there was a disruption of his custody, it occurred during a time when the mother was exercising sole custody and, therefore, cannot be considered extraordinary circumstances so as to overcome his superior right of custody (see Matter of Ferguson v Shelly, 80 AD3d at 905; Matter of Ramos v Ramos, 75 AD3d at 1009-1010; Matter of Stiles v Orshal, 290 AD2d 824, 825 [2002]). In the absence of such circumstances, the grandmother’s petition should have been dismissed.
Egan Jr., J., concurs. Ordered that the order is affirmed, without costs.

 Family Court warned the mother that the coaching needed to stop or she would have to leave.